# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL MICHAEL POHL, an individual and in his capacity as *pro bono* counsel for The Roman Catholic Diocese of Pittsburgh, Catholic Charities of the Diocese of Pittsburgh, Inc., and The Catholic Cemeteries Association of the Diocese of Pittsburgh,

        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF INTERGOVERNMENTAL AND EXTERNAL AFFAIRS, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF GENERAL COUNSEL, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF INSPECTOR GENERAL, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF THE ASSISTANT SECRETARY FOR LEGISLATION, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES ASSISTANT SECRETARY FOR PLANNING AND EVALUATION, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES PROGRAM SUPPORT CENTER, CENTERS FOR DISEASE CONTROL AND PREVENTION/AGENCY FOR TOXIC SUBSTANCES & DISEASE REGISTRY, CENTERS FOR MEDICARE AND MEDICAID SERVICES, and CENTERS FOR MEDICARE AND MEDICAID SERVICES OFFICE OF STRATEGIC OPERATIONS AND REGULATORY AFFAIRS/OPENNESS, TRANSPARENCY & ACCOUNTABILITY GROUP,

        Defendants.

Civil Action No. _____

**ELECTRONICALLY FILED**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Paul M. Pohl, an individual and in his capacity as *pro bono* counsel for The Roman Catholic Diocese of Pittsburgh, Catholic Charities of the Diocese of Pittsburgh, Inc., and The Catholic Cemeteries Association of the Diocese of Pittsburgh, alleges as follows:

## BASIS FOR THE ACTION

1.      This action is brought under the Administrative Procedure Act ("APA") and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to require Defendants to disclose requested records, as required by law, and which have been used in the adoption of federal regulations which have the force and effect of law.

2.      Plaintiff and his law firm are *pro bono* counsel for 61 Catholic dioceses and non-profit entities, including The Roman Catholic Diocese of Pittsburgh, Catholic Charities of the Diocese of Pittsburgh, Inc., and The Catholic Cemeteries Association of the Diocese of Pittsburgh, in ongoing litigation challenging the Patient Protection and Affordable Care Act (the "Affordable Care Act") under the Religious Freedom Restoration Act ("RFRA"), First Amendment, and APA.  Plaintiff's FOIA requests properly seek background information regarding the Affordable Care Act's requirement that employer health plans offer coverage for abortifacients, contraception, sterilization, and related counseling (the "Mandate"), as well as the narrow religious employer exemption from the Mandate's requirements.

## INTRODUCTION

3.      This action is filed after Plaintiff has expended over nine months of effort to obtain Defendants' compliance with their obligations under FOIA.  Plaintiff and his law firm initially submitted their FOIA requests to the United States Department of Health and Human Services ("HHS") on September 28, 2012.  Since that time, Plaintiff and his law firm:

- 2 -

- Were informed by way of a form letter and invoice of an astounding <u>$1,836,688</u> fee request for FOIA processing costs from just one of the many HHS operating divisions which had received Plaintiff's requests. This fee was then amended to an estimate of $7,797, after many calls and complaints regarding the original estimate.

- Were informed by the Centers for Disease Control and Prevention/ Agency for Toxic Substances & Disease Registry ("CDC/ATSDR") that it would take approximately <u>three years</u> for Plaintiff to receive a response to his FOIA requests and that narrowing the requests would not in any way guarantee a more expedient response. CDC/ATSDR later clarified that it could take <u>longer than three years</u> for Plaintiff to receive a response, indicating that it would take 24-36 months for Plaintiff's request "to rise to the top of the numerical processing queue because of CDC's significant agency backlog of FOIA requests and limited resources";

- Reached out to CDC/ATSDR leaving numerous messages and offering to have a conference call;

- Had a conference call with CDC/ATSDR offering to discuss concerns, response time, and narrowing requests. This call was largely unsuccessful once CDC/ATSDR indicated that Plaintiff narrowing his requests would not necessarily speed response time. Plaintiff has since offered to have another call with CDC/ATSDR;

- Filed an administrative appeal on March 27, 2013, to which Defendants have never responded;

- Sent fourteen letters to Defendants relating to the extreme delay associated with Plaintiff's requests and to various fee issues.  In these letters, Plaintiff: (i) repeatedly requested a response to his requests, (ii) offered to narrow the requests once HHS provided the scope of responsive documents as required by FOIA and provided a reasonable response time estimate, (iii) repeatedly requested a response to Plaintiff's administrative appeal, and (iv) offered practical suggestions as to how Plaintiff and Defendants might work to develop an action plan to alleviate the burden placed on Defendants and also ensure that Plaintiff received a response to his requests within a reasonable timeframe;

- Made repeated offers to meet Defendants in-person at the offices of HHS at whatever date and time might be convenient for Defendants to discuss fees and narrowing the FOIA requests;

- Were informed by HHS that:  "After considering your offer, we decline your suggestion for an onsite meeting, as it is not clear that progress could be made that could not otherwise be possible through written interaction."

- Were informed by HHS that it would take <u>between three and five years</u> for Plaintiff to receive a response to his requests;

- Sent a letter to HHS on May 21, 2013 objecting to the unreasonable projected response time and again offering to meet at the offices of HHS at whatever time might be convenient for Defendants "to develop an action plan to narrow our requests and ensure a more reasonable response time."

- Sent a letter to HHS on June 24, 2013 with three sub-requests to which Plaintiff requested a response in an expedient manner followed by subsequent discussion regarding all other requests.

4.      All of the above is not how the United States Government is supposed to work. Further, it is not how the Government is <u>required</u> to work under FOIA.  Instead of meeting their legal obligations under FOIA, Defendants have raised a continuing series of administrative and bureaucratic hurdles, including asking Plaintiff's clients to pay more than $1.8 million in FOIA processing costs.   Defendants' actions show a shocking disregard for their obligations as government officials to comply with the law.

5.      Plaintiff cannot wait three years or longer for a response to his requests and has made every reasonable effort to assist the Government in responding to appropriate requests. Yet, the Government has not been cooperative.  In fact, it has been patently uncooperative.

6.      Plaintiff is entitled to a response on a reasonable timetable in accordance with the law and in accordance with FOIA's objectives.  Plaintiff should not have to wait three years or longer for production and relevant documents.

7.      Indeed, President Barack Obama has instructed that "[i]n responding to requests under the FOIA, executive branch agencies [] should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public."   Freedom of Information Act, Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683, 4683 (Jan. 26, 2009).  Such cooperation, unfortunately, has not been evident here.

8.      The Office of the Attorney General has also recognized that "[o]pen government requires not just a presumption of disclosure but also an effective system for responding to FOIA requests.  Each agency must be fully accountable for its administration of the FOIA."  Office of

the Attorney General, Memorandum for Heads of Executive Departments and Agencies, March

19, 2009, http://www.justice.gov/ag/foia-memo-march2009.pdf (last visited May 1, 2013).

9.     The Attorney General has stated that "[u]nnecessary bureaucratic hurdles have no

place in the 'new era of open Government' that the President has proclaimed." *Id.*

10.     Finally, the Attorney General has instructed that "[t]imely disclosure of

information is an essential component of transparency.  Long delays should not be viewed as an

inevitable and insurmountable consequence of high demand." *Id.*

11.     Plaintiff has tried in good faith to resolve the hurdles raised in response to his

requests by offering to work with Defendants to obtain documents in a practical and efficient

manner.  Plaintiff and his law firm have offered to meet with Defendants to discuss Defendants'

issues with responding to the FOIA requests and how narrowing the requests might speed

response time.  Defendants have responded asking Plaintiff to commit to narrowing the requests,

but not indicating how this might speed response time or providing Plaintiff with any concrete

timetable.   Defendants have been unwilling to meet and meaningfully communicate to

accomplish FOIA's goals and have indicated that long delays are inevitable -- without explaining

why or attempting to cooperate by working jointly towards a better solution.  Accordingly, after

over nine months of delay, Plaintiff has been left with no option but to seek court enforcement of

FOIA's requirements.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action and the parties pursuant to 5 U.S.C.

§ 552(a)(4)(B) and 28 U.S.C. § 1331.

13.     Plaintiff has exhausted his remedies as provided under the APA and FOIA.

Plaintiff has also committed to pay search fees of $14,000 and has indicated a willingness to

discuss additional fees.

14.     Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

15.     Plaintiff is a citizen of the United States and resident of this District who, on or about September 28, 2012, requested certain data and records from Defendants pursuant to FOIA.

16.     Defendant HHS is an agency of the United States within the meaning of 5 U.S.C. § 552(f).

17.     Defendants HHS Office of Intergovernmental and External Affairs ("OIEA"), HHS Office of General Counsel ("OGC"), HHS Office of Inspector General ("OIG"), HHS Office of the Assistant Secretary for Legislation ("ASL"), HHS Assistant Secretary for Planning and Evaluation ("ASPE"), HHS Program Support Center ("PSC"), CDC/ATSDR, Centers for Medicare and Medicaid Services ("CMS"), and CMS Office of Strategic Operations and Regulatory Affairs/Openness, Transparency & Accountability Group are also agencies within the meaning of 5 U.S.C. § 552(f) and are component entities of HHS ("HHS Component Entities" or "Component Entities").

18.     Under 5 U.S.C. § 552(a)(3), Defendants are legally required to obtain and produce the data, records, and documents that Plaintiff has requested under FOIA.

## FACTUAL HISTORY

19.     Plaintiff is a partner in the Pittsburgh office of Jones Day, an international law firm.  Jones Day represents various Catholic dioceses, universities, and related organizations across the nation in their legal challenges to the Mandate and religious employer exemption promulgated pursuant to Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010).  These

lawsuits challenge the Mandate and religious employer exemption under the RFRA, Free Exercise, Establishment, and Free Speech Clauses of the First Amendment, and APA.

20.     The Affordable Care Act requires employer "group health plan[s]" to cover, *inter alia*, women's "preventive care and screenings."  42 U.S.C. § 300gg-13(a)(4).

21.     The Government asked the Institute of Medicine ("IOM"), a non-governmental body, to develop guidelines regarding "preventive care."  IOM's resulting definition includes all FDA-approved contraceptives, including abortifacients, sterilization, and patient education and counseling services.  Comm. on Preventive Servs. for Women, Inst. of Med., Clinical Preventive Services for Women (2011), http://www.nap.edu/openbook.php?record_id=13181.

22.     HHS adopted IOM's "preventive care" guidelines in their entirety.  HHS' new guidelines required insurers and group health plans to cover "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity."  *See* Health Res. Servs. Admin., Women's Preventive Services:     Required     Health     Plan     Coverage     Guidelines,     *available     at* http://www.hrsa.gov/womensguidelines/.

23.     Accordingly, as part of the Affordable Care Act, the Government requires employer health plans to offer coverage for abortifacients, contraception, sterilization, and related counseling (i.e. the Mandate).  *See* 45 C.F.R. § 147.130(a)(1)(iv).

24.     The sincerely-held religious beliefs of the Catholic organizations, which Jones Day represents, prohibit these organizations from providing, subsidizing, facilitating, or sponsoring the provision of abortifacients, contraception, sterilization, and related counseling.

25.     The Government later issued a narrow exemption to this Mandate for "religious employers," including the novel definition of such entities as "organization[s] that meet[] all of the following criteria":

(1) The inculcation of religious values is the purpose of the organization.

(2) The organization primarily employs persons who share the religious tenets of the organization.

(3) The organization serves primarily persons who share the religious tenets of the organization.

(4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

76 Fed. Reg. 46621, 46626 (Aug. 3, 2011) (codified at 45 C.F.R. § 147.130(a)(1)(iv)(A)-(B)).

26.     Under public pressure regarding the scope and operation of the Mandate, in January 2012, the Government announced a temporary safe harbor from its requirements for some—but not all—religious employers, giving them "until August 1, 2013, to comply."[1]

27.     HHS proffered various proposed changes to the Mandate and religious employer exemption in an Advance Notice of Proposed Rulemaking ("ANPRM"), 77 Fed. Reg. 16501 (Mar. 21, 2012) and Notice of Proposed Rulemaking ("NPRM"), 78 Fed. Reg. 8456 (Feb. 6, 2013) before issuing the Final Rules on June 28, 2013 (*available at* http://www.ofr.gov/OFRUpload/OFRData/2013-15866_PI.pdf).

28.     In Plaintiff's requests, Plaintiff seeks background information regarding the issuance of the Mandate, its proposed exemptions, its proposed accommodations, and the safe harbor (the "Requested Documents"), all of which are relevant to the lawsuits filed on behalf of

---

[1] News Release, A Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius (Jan. 20, 2012), *available at* http://www.hhs.gov/news/press/2012pres/01/20120120a.html.

Catholic organizations with religious objections to the Mandate and religious employer exemption. By law, FOIA requests cannot be ignored or denied because there is discovery ongoing in other lawsuits. The obligations to produce responsive materials are independent of each other.

29. Plaintiff and his law firm have not been able to obtain the vast majority of Requested Documents in discovery in the pending lawsuits.

## PROCEDURAL HISTORY

**I.      Extreme Delay and Lack of Responsiveness in Violation of the FOIA**

30. On September 28, 2012, Plaintiff submitted his FOIA requests to HHS by way of letter, pursuant to 45 C.F.R. § 5.21, requesting background information regarding the Mandate and religious employer exemption.

31. Plaintiff's September 28, 2012 letter included 11 total requests regarding the Mandate and religious employer exemption including: communications in advance of the issuance of the Mandate and religious employer exemption, documents regarding women's preventive care, documents regarding other exemptions or waivers from the Mandate's requirements, documents regarding the one-year safe harbor from the Mandate's requirements, and information regarding the IOM's role in the issuance of the Mandate. A true and correct copy of Plaintiff's September 28, 2012 FOIA Requests is attached to this Complaint as Exhibit A.

32. On October 1, 2012, HHS acknowledged receipt of Plaintiff's FOIA requests and informed Plaintiff that the request "[wa]s being processed as expeditiously as possible." As events unfolded, this statement proved to be untrue.

33. On its own, and without seeking Plaintiff's agreement, HHS forwarded Plaintiff's requests to nine different HHS Component Entities. Three separate HHS operating divisions,

CMS (November 7, 2012), CDC/ATSDR (November 27, 2012), and National Institutes of Health ("NIH")[2] (December 21, 2012), acknowledged receipt of Plaintiff's request. Five additional HHS offices also indicated they have received Plaintiff's request: OIEA, OGC, OIG, ASL, and ASPE.

34.     While HHS FOIA regulations permit such forwarding, HHS provided no strategy for coordinating disparate agencies' responses and no unified response system. Plaintiff, thus, was left with the burden of corresponding with each HHS Component Entity to ensure receipt of a response to his requests. Such burden shifting is not appropriate under FOIA. To date, none of the HHS Component Entities have provided any data to Plaintiff in response to his requests.[3]

35.     For almost two months, Plaintiff received no communication from HHS relative to his FOIA requests.

36.     On November 21, 2012, HHS sent an interim response to Plaintiff's September 28, 2012 requests. The interim response estimated charges of $12,473 for the requests and asked that, within 30 days, Plaintiff provide a written statement of agreement to pay the billable FOIA processing costs. The interim response included three compact discs containing what purported to be the rulemaking record for women's health provisions of the Interim Final, Amended Interim Final, and Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventative Services Under the Patient Protection and Affordable Care Act.

---

[2] In a letter dated April 22, 2013, NIH provided a final response indicating "that all documents responsive to your FOIA request located within NIH files fall under the jurisdiction of HHS and have been referred to HHS for review and response to you." Thus, NIH has not been named as a Defendant in this lawsuit.

[3] Both CMS and CDC/ADSTR provided information for Plaintiff to track his FOIA requests. As of the date of this Complaint, the CMS FOIA website indicates that the FOIA requests are in the appeal process, but that the projected date of response is undetermined. The CDC/ADSTR website indicates that program staff is in the process of searching for responsive documents with no detail of when this search may be completed or when review of responsive documents might begin.

37.     The November 21, 2012 "interim response" was not meant to and did not respond to the vast majority of Plaintiff's requests.  Rather, "[t]he rulemaking record consist[ed] of the text of the [Mandate] and the materials that HHS, the Department of Labor, and the Department of the Treasury relied on in promulgating the [Mandate]."  The vast majority of the rulemaking record consisted of public comments.

38.     On December 17, 2012, Plaintiff sent HHS a written statement of his agreement to pay FOIA processing costs not to exceed $14,000.  At that time, Plaintiff asserted his non-commercial use of the information in furtherance of the First Amendment and RFRA claims of religious organizations with objections to the Mandate.  Plaintiff also asked for an itemized list of costs and specific details as to claims of privilege, neither of which were ever provided.

## II.     Plaintiff's Requests to Defendants for Real Communication

39.     After five months of waiting, on February 28, 2013, Plaintiff sent a follow-up letter to HHS, CDC/ATSDR, CMS, and NIH to ask about the reasons for the extreme delay associated with responding to his requests.

40.     Plaintiff finally received a response on March 18, 2013 when CDC/ATSDR sent Plaintiff a form letter requesting that Plaintiff commit to payment of over $1.8 million in FOIA processing costs for records related only to the CDC/ATSDR division of HHS.

41.     On March 27, 2013, Plaintiff sent a letter to HHS and CDC/ATSDR explaining that Plaintiff submitted his FOIA requests to HHS, not the CDC/ATSDR and "[i]t is HHS' responsibility to collect relevant materials from its operating divisions and provide that material to us" "not our responsibility to seek out such materials, or to chase after HHS' designees, for production of documents that are responsive to our requests."  Plaintiff expressed his opposition to the $1,836,688 fee letter since:  (1) in Plaintiff's view, he had not requested any information

other than background information which HHS would have relied upon in passing the Mandate; and (2) Plaintiff's requests were in furtherance of the non-commercial purpose of representing clients *pro bono* in litigation challenging the Mandate as violative of their religious freedom, thus Plaintiff should not be charged for review costs.  Plaintiff requested a telephone conference to discuss the basis for the astounding fee invoice and the projected time for responding to Plaintiff's requests.

42.     In follow-up to the March 27, 2013 letter, Mary Pat Stahler, an associate at Jones Day, repeatedly attempted to reach CDC/ATSDR via telephone and left CDC/ATSDR several messages indicating a desire to speak to an agency representative.   None of her calls were returned.

43.     On April 5, 2013, Robert Eckert, Director of FOIA/Privacy Act Divisions in the Office of Public Affairs for HHS, faxed Plaintiff a letter explaining that he "reassessed" Plaintiff's FOIA requests and determined that Plaintiff's fee category is to be "other" rather than "commercial."   Mr. Eckert indicated that HHS and its operating divisions and offices would submit revised fee estimates based on this reassessment.  He also stated that a "conference call is not needed" and suggested that Plaintiff narrow the scope of his requests.  He did not provide any specifics or explain how narrowing would help speed response time.

44.     On April 8, 3013, CDC/ATSDR faxed a letter to Plaintiff recategorizing Plaintiff as a "Category Three" requestor and recalculating fee estimates accordingly.  The CDC/ATSDR also stated that CDC/ATSDR "do[es] not believe that a telephone conference is necessary at this time."

45.     On April 10, 2013, Plaintiff sent HHS and CDC/ATSDR a letter accepting acknowledgment that Plaintiff is a Category Three requestor and reaffirming that Plaintiff is

willing to receive documents in electronic form. Plaintiff also stated disagreement that a conference call was not necessary given that "[d]espite several voicemails and other attempts to reach a live person to discuss [Plaintiff's] requests, no agency representative has given [Plaintiff] even the most simple courtesy of returning [Plaintiff's] calls." Plaintiff also indicated willingness to discuss narrowing the requests.

46.     Thereafter, CDC/ATSDR agreed to hold a telephone conference which took place on April 16, 2013. During this conference, Katherine Norris, CDC/ATSDR FOIA Officer, indicated that because of backlog and understaffing at the CDC/ATSDR FOIA Office, it would take 24-36 months for Plaintiff to receive a response to his FOIA requests and that, even if Plaintiff narrowed his requests, there was no guarantee that a response would be provided within a shorter timeframe.

47.     On April 18, 2013, Ms. Stahler sent HHS and CDC/ATSDR a letter confirming details of the April 16, 2013 telephone call. Among the details confirmed was CDC/ATSDR's contention that "even if [Plaintiff and his law firm] did narrow [the] requests, because of the backlog of requests, it could still take the CDC 24-36 months to respond."

48.     The April 18, 2013 letter requested that the agency fulfill its obligations under FOIA to gather and review documents and communicate the scope of documents intending to be withheld and produced within 30 days of receiving requests.

49.     The April 18, 2013 letter also stated Plaintiff's willingness to meet representatives from CDC/ATSDR at CDC/ATSDR offices whenever convenient to discuss narrowing requests if CDC/ATSDR would agree to "(1) comply with FOIA by providing the scope of responsive documents and reasons for withholding any documents and (2) provide a reasonable timeline for a response."

50.     Thereafter, both CDC/ATSDR and HHS provided Plaintiff with revised fee estimates totaling $24,570 based on the reassessment mentioned in Mr. Eckert's April 5, 2013 letter.

51.     In a letter to Mr. Eckert dated May 2, 2013, Plaintiff again expressed a willingness to meet in-person to discuss issues relating to fees and potentially narrowing Plaintiff's requests in an effort to speed response time.  Specifically, the May 2, 2013 provides:

> we are unable to narrow our requests without some explanation of why it will take HHS and its operating divisions several years to respond to our requests.  We think it would be helpful to meet in person to talk through these issues and attempt to reach a resolution.  The purpose of this meeting would be to walk through the requests to gain an understanding of what might be problematic in terms of the scope of our requests, and then jointly develop a plan that will speed response time.  Without any guidance and without provision of the scope of responsive documents, as required by *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, No. 12-5004, 2013 BL 89299 (D.C. Cir. April 2, 2013), we are unsure of how we might narrow our requests in a helpful manner.

52.     In the May 2, 2013 letter, Plaintiff proposed May 8, 2013 as a meeting date, but requested alternatives from Mr. Eckert if that date did not work.

53.     After receiving no communication from Defendants as to the proposed May 8, 2013 meeting date, Plaintiff sent another letter on May 9, 2013 notifying Defendants that it was "our last good faith effort to obtain a response [] before exercising our statutory right of proceeding with a lawsuit in federal court."

54.     Thereafter, on May 9, 2013, Plaintiff received a fax from Mr. Eckert.  The faxed letter was dated May 7, 2013, but apparently had been sent to the incorrect fax number.  In that letter, Mr. Eckert informed Plaintiff that:  "[a]fter considering your offer, we decline your suggestion for an onsite meeting, as it is not clear that process could be made that could not

otherwise be possible through written interaction." Mr. Eckert indicated that Defendants would continue to discuss how to handle Plaintiff's FOIA requests.

55.     Plaintiff sent a follow-up letter on May 10, 2013 expressing disappointment that Defendants were unwilling to meet in-person to discuss fees and narrowing the requests and indicating that since HHS has never engaged in live communication with Plaintiff, there was no basis for the statement that an in-person meeting would not result in any progress.

56.     On May 15, 2013, CDC/ATSDR responded that because of agency backlog and limited resources, it could take longer than three years for Plaintiff to receive a response to his requests and that, while CDC/ATSDR was willing to discuss narrowing requests, they could not agree to a more expedient response time.

57.     HHS responded on May 16, 2013, but did not address Plaintiff's request for an in-person meeting. Rather, HHS indicated that they would use searches performed to respond to discovery requests in *Roman Catholic Archdiocese of N.Y. v. Sebelius*, No. 12-cv-02542-BMC (E.D.N.Y.) as a starting point for responding to Plaintiff's FOIA requests. Despite this, HHS estimated that it may take three to five years for Plaintiff to receive a response to his request.

58.     In Plaintiff's letter dated May 21, 2013, Plaintiff responded to CDC/ATSDR's May 15, 2013 letter and HHS' May 16, 2013 letter.

59.     As to CDC/ATSDR, Plaintiff continued to express willingness to discuss narrowing his requests. Plaintiff requested a conference call so that Plaintiff could work with CDC/ATSDR to determine how a response could be provided in a more reasonable timeframe and requested that CDC/ATSDR "provide us with the categories of the 'over one million pages of response documents which would fall within the scope of [our] request' so that we can better understand your position" in advance of the call. CDC/ATSDR never responded to this letter,

despite Plaintiff following-up in a letter dated June 5, 2013 regarding the failure of CDC/ATSDR to "respond with dates and times that would be acceptable for a conference call, so we can move this process forward after many months of delay."

60.     As to HHS, Plaintiff expressed that discovery sought in *Roman Catholic Archdiocese of N.Y.* was not identical to the documents sought in Plaintiff's FOIA requests. Additionally, Plaintiff objected to the three to five year projected response time and <u>again</u> requested an in-person meeting at the offices of HHS and at whatever time was convenient for Defendants "to develop an action plan to narrow our requests and ensure a more reasonable response time."

61.     HHS responded on May 31, 2013 by re-producing documents which had already been provided in *Roman Catholic Archdiocese of N.Y.*  These documents were not compiled in response to Plaintiff's FOIA requests, but rather pursuant to a court order in that case.  HHS explained that standard practice for agencies when responding FOIA requests is to carry out the process out through a documentary process.  Later in the day, HHS contacted Plaintiff and explained that the May 31, 2013 letter was sent prematurely.

62.     HHS responded on June 7, 2013, but denied Plaintiff's request for an in-person meeting stating that the Agency's limited personnel and resources combined with the large volume of requests prevents HHS from meeting with any requestors.  HHS emphasized that the Agency faces a significant backlog of requests which prevents the Agency from making a timely response.  For a second time, HHS produced those documents which had already been provided in *Roman Catholic Archdiocese of N.Y.*

63.     In Plaintiff's letter dated June 24, 2013, Plaintiff acknowledged receipt of the May 31 and June 7 letters.  Plaintiff then provided HHS with preliminary sub-requests to aid

HHS in processing Plaintiff's requests and to give the Agency one final opportunity to comply with the Agency's statutory duty before Plaintiff resorted to litigation.

64.     As of the date of this Complaint, Plaintiff has received no further communications from HHS or any of its Component Entities.   Currently, Plaintiff is faced with three years or more of delay, no plan for coordinating or receiving responses and documents from Defendants, and a refusal to even meet to discuss a workable plan forward.   All of this will cost Plaintiff $24,994 in FOIA processing charges.   Plaintiff's efforts to meet in-person to discuss meaningful solutions to accomplish FOIA's goal have proved unsuccessful.   In sum, Defendants have not complied with their obligations under the law.   The totality of the conduct suggests that the government officials involved see themselves free to ignore legal obligations.

### III.    Plaintiff's Administrative Appeal, To Which Defendants Never Responded

65.     On March 27, 2013, Plaintiff submitted an appeal to HHS, CDC/ATSDR, CMS, and NIH pursuant to the FOIA, 5 U.S.C § 552(a)(6), and HHS FOIA regulations, including 45 C.F.R. § 5.34-5.35.   A true and correct copy of Plaintiff's March 27, 2013 Appeal Letter is attached to this Complaint as Exhibit B.

66.     On March 28, 2013, both PSC and CMS Office of Strategic Operations and Regulatory Affairs/Openness, Transparency & Accountability Group acknowledged receipt of the appeal.

67.     Despite the requirement that the appeal be resolved within twenty days pursuant to 45 C.F.R. § 5.35 and despite numerous inquiries from Plaintiff as to the status of the appeal, to date, neither HHS nor any of its Component Entities have responded to the appeal.

## FIRST CAUSE OF ACTION

### Violation of FOIA (5 U.S.C. § 552(a)(3) and 5 U.S.C. § 552(a)(6)) and HHS Regulation (45 C.F.R. § 5.35).

68.     Paragraphs 1-67 are incorporated herein by reference.

69.     Pursuant to FOIA, 5 U.S.C. § 552, Plaintiff made his initial FOIA request to HHS by letter dated September 28, 2012.

70.     The Requested Documents were relied upon by HHS in proposing and promulgating regulations under 42 U.S.C. § 300gg-13(a)(4).

71.     For over nine months, Defendants have refused to obtain and produce the Requested Documents and have proposed a timetable of three years or more.

72.     Defendants are required by law to obtain and produce the Requested Documents to Plaintiff.

73.     Defendants have violated, *inter alia*, 5 U.S.C. § 552(a)(3); 5 U.S.C. § 552(a)(6); and 45 C.F.R. § 5.35; by failing to produce to Plaintiff the Requested Documents.

74.     Plaintiff has exhausted his administrative remedies.  Plaintiff has committed to pay search fees of $14,000 and has indicated a willingness to discuss additional fees and a willingness to meet to discuss narrowing the requests.

75.     Plaintiff has been injured by being denied access to the Requested Documents to which he is entitled.

## SECOND CAUSE OF ACTION

### Violation of  FOIA and APA (5 U.S.C. § 552, 702, 706)

76.    Paragraphs 1-75 are incorporated herein by reference.

77.    FOIA, and its implementing regulations, provide a process by which requests for the production of information, documents and data are made.  FOIA governs the production of the Requested Documents.

78.    Section 552 of FOIA provides the process by which initial requests are considered and appeals of adverse determinations are made.   In particular, Section 552(a)(6) provides a mechanism by which appeals of denials are considered and finally decided.

79.    Defendants violated Section 552 by failing to decide Plaintiff's appeal.

80.    Defendants violation Section 706 acting in an arbitrary and capricious manner by failing to decide Plaintiff's appeal.

81.    Defendant violated Section 706 acting in a manner otherwise contrary to law by failing to decide Plaintiff's appeal.

82.    Plaintiff has exhausted his administrative remedies.  Plaintiff has committed to pay search fees of $14,000 and has indicated a willingness to discuss additional fees and a willingness to meet to discuss narrowing the requests.

83.    Plaintiff has been injured by being denied the process under FOIA and the APA to which he is entitled.

## PRAYER FOR RELIEF

WHEREFORE, and in consideration of the allegations in paragraphs 1-83, Plaintiff hereby requests:

A.     An order declaring that Plaintiff is entitled to the Requested Documents and other materials requested and granted by way of the HHS decision of appeal;

B.     An order compelling Defendants to obtain and turn over to Plaintiff copies of the Requested Documents without delay;

C.     An order declaring Defendants' actions to be in violation of FOIA and APA;

D.     Costs of suit, including attorneys' fees, filing fees, costs of service; and

F.     Such other relief as the Court deems proper.

Respectfully submitted, this 1st day of July, 2013.

     */s/ John D. Goetz*_____
     John D. Goetz (PA ID No. 47759)
     Ira M. Karoll (PA ID No. 310762)
     Mary Pat Stahler (PA ID No. 309772)
     JONES DAY
     500 Grant Street, Suite 4500
     Pittsburgh PA  15219-2514
     Phone:  (412) 391-3939
     Fax:     (412) 394-7959

     *Attorneys for Plaintiff Paul Michael Pohl, an individual and in his capacity as pro bono counsel for The Roman Catholic Diocese of Pittsburgh, Catholic Charities of the Diocese of Pittsburgh, Inc., and The Catholic Cemeteries Association of the Diocese of Pittsburgh*